IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DERRICK COOK,

     Petitioner,

  v.                             Case No. 1:96cv424
                                    Judge Michael H. Watson
CARL ANDERSON, Warden,         Magistrate Judge Kemp

     Respondent.

**OPINION and ORDER**

Petitioner, a state prisoner sentenced to death by the State of Ohio, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on petitioner's motion for summary judgment, (Doc. # 75), respondent's memorandum in opposition, (Doc. # 76), and petitioner's reply, (Doc. # 77). For the following reasons, petitioner's motion for summary judgment on claims one, two, three, four, and nine will be denied, and this matter will be scheduled for an evidentiary hearing on petitioner's second and fourth grounds for relief.

I. Introduction

The habeas corpus petition originally presented fourteen grounds for relief. The only claims remaining to be decided in this habeas corpus action are the first (actual innocence), second (*Brady* violations), third (ineffective assistance of counsel relating to use of hypnotically-refreshed testimony), fourth (prosecutorial misconduct claims relating to use of hypnotically-refreshed testimony), and ninth (racism in selection of grand jury forepersons). In its *Opinion and Order* of February 7, 2001, the Court denied grounds five and eleven as procedurally defaulted, (Doc. # 22). In its *Opinion and*

*Order* of September 24, 2002, the Court denied grounds six, seven, eight, ten, twelve, thirteen, and fourteen on the merits, (Doc. # 46).

On March 23, 2004, the Honorable George C. Smith issued an *Opinion and Order* denying petitioner's motion for an evidentiary hearing on his first, second, third, fourth, and ninth grounds for relief. (Doc. # 67). Having expanded the record with documentary evidence, the Court determined that "[t]he information that petitioner seeks to develop through an evidentiary hearing is already part of the record, can be made part of the record, or is otherwise unnecessary." (*Opinion and Order* of 03/23/04, Doc. # 67, at 20). In so holding, however, the Court noted:

> The Court may very well determine, during its review of the merits of petitioner's claims, that a genuine factual dispute exists which cannot be resolved on the record before the Court or through further expansion of the record. In that event, the Court may reconsider its decision about whether an evidentiary hearing should be held.

(*Id.* at 21).

This case was transferred to the undersigned on October 1, 2004. (Doc. # 79). Having reviewed petitioner's motion for summary judgment on claims one, two, three, four, and nine, as well as respondent's memorandum in opposition, petitioner's reply, the record, and the many exhibits that petitioner has submitted, this Court is now of the view that genuine factual disputes exist and that an evidentiary hearing should be held on petitioner's second and fourth grounds for relief.

With respect to his second ground for relief, petitioner cited *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, in arguing that the prosecution in this case failed to provide petitioner's trial counsel with numerous police records and reports that were material to the defense that petitioner was not involved in the abduction or murder of

Frank Shorter. Petitioner requested an evidentiary hearing to develop the facts underlying his claim. Specifically, petitioner sought to present the testimony from persons who could authenticate records obtained from Cincinnati and Lockland Police Departments; attorneys Joseph Dixon and David Campbell explaining that they never received the reports in question, that they had no independent knowledge of the information set forth in those reports, and that those reports were material to their defense that petitioner was not involved in the abduction or murder of Frank Shorter; and William Wester, Ed.D., concerning alleged abuses in the hypnosis of witnesses in petitioner's case that undermined the reliability of those witnesses' ability to recall what they saw. (Doc. # 62, at 11-12.)

With respect to his fourth ground for relief, petitioner cited *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)(Douglas, J., dissenting), and *Berger v. United States*, 295 U.S. 78 (1935), for the proposition that the function of a prosecutor under the federal constitution "is to vindicate the right of people as expressed in the laws and give those accused of crime a fair trial." (Doc. # 62, at 10.) Petitioner argued that the prosecution in his case violated those basic principles by misrepresenting to the defense counsel and the trial court the nature and extent of the use of hypnosis to enhance certain witnesses' recollections, and by thereafter knowingly presenting false or misleading testimony from those witnesses at trial. To further develop the facts underlying this claim, petitioner sought an evidentiary hearing to present testimony from persons who could authenticate records obtained from Cincinnati and Lockland Police Departments; attorneys Joseph Dixon and David Campbell explaining why they acted and relied on the prosecution's representation that the State was not using hypnotically

enhanced testimony, that the prosecutor never reported or tried to correct false or misleading testimony by prosecution witnesses, and that they did not have access to police reports to rebut the prosecutor's final argument that the witness identifications were unimpeachable; and William Wester, Ed.D., concerning alleged abuses in the hypnosis of witnesses in petitioner's case that undermined the reliability of those witnesses' ability to recall what they saw.  (Doc. # 62, at 13-14.)

## II.  Standard of Review

Section 2254(e)(2), Title 28 of the United States Code, imposes limitations on a petitioner's entitlement to an evidentiary hearing in habeas corpus cases.  However, "[b]y the terms of its opening clause the statute applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.'  If the prisoner failed to develop the facts, an evidentiary hearing cannot be granted unless the prisoner's case meets the other conditions of §2254(e)(2)." *Williams (Michael) v. Taylor*, 529 U.S. 420, 430 (2000).  Thus, when a petitioner seeks to present facts that were not considered by the state courts, and to have his constitutional claims considered in light of those new facts, petitioner is not entitled to an evidentiary hearing if he was at fault for the failure to develop the facts underlying his claims. Petitioner is at fault for the failure to develop the facts if he failed, based on the evidence available to him, to exercise due diligence in developing and presenting that evidence. *Williams, supra*, 529 U.S. at 432.

The Court determined in its *Opinion and Order* of March 23, 2004, that "petitioner was reasonably diligent in his efforts to develop the facts underlying the claims upon which he requests a hearing, and respondent does not appear to argue

otherwise." (Doc. # 67, at 6). The Court noted that during postconviction proceedings, petitioner had presented specific, credible claims to the state courts, had supported those claims to the best of his ability with non-record exhibits, and had requested discovery and an evidentiary hearing. Under those circumstances, "[i]t is not clear to the Court what more petitioner could have done to develop the facts underlying his claims." (*Id*. at 7). Thus, §2254(e)(2) does not operate as a bar to an evidentiary hearing on petitioner's ninth ground for relief.

That a hearing *can* be held does not mean that a hearing *should* be held. The decision of whether an evidentiary hearing should be held is within the discretion of the district court. *Bowling v. Parker*, 344 F.3d 487, 511-12 (6ᵗʰ Cir. 2003). In the Sixth Circuit, an evidentiary hearing generally is warranted if the petitioner demonstrates three criteria: (1) that he alleges sufficient grounds for release; (2) that relevant facts are in dispute; and (3) that the state courts did not hold a full and fair evidentiary hearing. *Sawyer v. Hofbauer*, 299 F.3d 605, 610-11 (6ᵗʰ Cir. 2002)(citations omitted).[1]

### III. Second and Fourth Grounds for Relief

In his second ground for relief, petitioner asserts that the prosecution suppressed material, exculpatory evidence in violation of *Brady v. Maryland* and its progeny. The essential elements of a claim brought under *Brady v. Maryland*, 373 U.S. 83 (1963), are: (1) the prosecution suppressed evidence; (2) the evidence was

---

[1]      In making the determination of whether an evidentiary hearing should be held, or even can be held under §2254(e)(2), it bears reminding that, to the extent that any factual issues *were* determined by the state courts, those determinations shall be presumed correct unless petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6ᵗʰ Cir. 2003); *Campbell v. Coyle*, 260 F.3d 531, 539 (6ᵗʰ Cir. 2001); *Clark v. O'Dea*, 257 F.3d 498, 506 (6ᵗʰ Cir. 2001); *Warren v. Smith*, 161 F.3d 358, 360-61 (6ᵗʰ Cir. 1999).

favorable to the defense; and (3) the evidence was material to either guilt or punishment. *See, e.g., Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Favorable evidence, if not disclosed prior to or during trial, is suppressed within the meaning of *Brady* irrespective of the good faith or bad faith of the prosecutor. *Brady*, 373 U.S. at 88; *Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Agurs*, 427 U.S. 97, 110 (1976). Evidence is favorable within the meaning of *Brady* if it is exculpatory or impeaching. *Strickler*, 527 U.S. at 281-82.

To demonstrate that evidence is material within the meaning of *Brady*, petitioner need not show that the evidence would lead to his acquittal. *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio*, 405 U.S. at 154; *Agurs*, 427 U.S. at 111. Nor must petitioner show that the evidence would establish his innocence by a preponderance of the evidence. *Schledwitz v. United States*, 169 F.3d 1003, 1011-12 (6th Cir. 1999). Rather, evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Bagley*, 473 U.S. at 682 (plurality); *Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *Giglio*, 405 U.S. at 154. A reasonable probability is that which is sufficient to affect or undermine confidence in the outcome of the trial. *Bagley*, 473 U.S. at 682. To determine whether such a probability exists, the withheld evidence must be considered collectively. *Castleberry v. Brigano*, 349 F.3d 286, 291 (6th cir. 2003)(citing *Kyles v. Whitley, supra*, 514 U.S. at 436); *see also Schledwitz v. United States, supra*, 169 F.3d at 1012-13.

The essence of petitioner's *Brady* claim is that the prosecution suppressed numerous police reports containing information that would have impeached the

credibility of the four eyewitnesses who placed petitioner either at Sullivan's clothing store around the time the store's clerk, Frank Shorter, was abducted or with Shorter in the vicinity of where his body was found three days after he went missing, as well as a police officer who testified that a caller to Crimestoppers identified as petitioner stated that he was in possession of the murder weapon when, according to suppressed reports, the officer noted that the caller said he would have to steal the murder weapon. The former category of suppressed documents consists not only of prior inconsistent statements by those four witnesses, with some of those inconsistencies stemming from the undisclosed use of hypnosis to enhance the witnesses' recollections, but also statements by individuals who were never identified as witnesses and who provided various observations that were inconsistent with those of the witnesses who *did* testify and who *did* identify petitioner.

In his fourth ground for relief, petitioner asserts that the prosecution committed misconduct not only by misrepresenting to defense counsel and the trial court the nature and extent of the use of hypnotically refreshed testimony, but also by knowingly presenting, or failing to correct, false or misleading testimony by several key witnesses. As a general rule, prosecutorial misconduct does not provide the basis for habeas corpus relief unless it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Because habeas corpus courts do not possess supervisory powers over state prosecutors, the standard of review to be applied to allegations of prosecutorial misconduct, whatever the nature of the alleged misconduct, is limited to due process. *See Byrd v. Collins*, 209 F.3d 486,

529 (6th Cir. 2000)(citing *Cook v. Bordenkircher*, 602 F.2d 117, 119 n.5 (6th Cir. 1979). In that regard, because the "'touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor...,'" *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)(quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)), Sixth Circuit case law reflects the "extreme nature of prosecutorial misconduct required for a federal court to issue the writ." *Angel v. Overberg*, 682 F.2d 605, 609 (6th Cir. 1982).

Against that general backdrop, petitioner alleges specifically that the prosecutor not only knowingly misrepresented to the trial court and defense counsel the nature and extent of the use of hypnosis to enhance witnesses' recollections, but also presented or failed to correct false or misleading testimony. Due process is violated when a prosecutor deliberately misleads a defendant to his prejudice. *See, e.g., Mooney v. Holohan*, 294 U.S. 103, 112 (1935). More fundamentally, attorneys representing the State owe candor to the Court, *Cf. United State v. Ott*, 489 F.2d 872, 874 (7th Cir. 1973), and to defense counsel. *See Gray v. Netherland*, 518 U.S. 152, 165 (1966). In *Bagley,* the Supreme Court found prosecutorial misconduct rising to the level of a due process violation, in part due to misrepresentations made by the prosecution in a discovery response concerning incentives that had been promised to cooperating witnesses. *Bagley, supra,* 473 U.S. at 682-83.

Regarding the second component of petitioner's prosecutorial misconduct claim, it is well settled that "a conviction obtained through use of false testimony, known to be such by representatives of the State, must fall under the Fourteenth Amendment .... The same result obtains when, the State, although not soliciting false evidence, allows it

to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To

prove such a claim, petitioner must demonstrate that: "(1) the evidence the prosecution

presented was false; (2) the prosecution knew it was false; and (3) the false evidence

was material." *Workman v. Bell*, 178 F.3d 759, 766 (6th Cir. 1998); *see also Coe v. Bell*,

161 F.3d 320, 343 (6th Cir. 1998). It is petitioner's burden to show that the testimony in

question was "indisputably" false. *Byrd v. Collins, supra*, 209 F.3d at 517 (6th Cir.

2000)(citing *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)), and *United

States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986)). Further, because this is a habeas

proceeding, petitioner must demonstrate that any such violation "'so infected the trial

with unfairness as to make the resulting conviction a denial of due process.'" *Darden v.

Wainwright, supra*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo, supra*, 416 U.S.

at 643).

Petitioner's arguments stem from the following exchange during a pretrial

hearing. At a motions hearing on July 30, 1990, the prosecution made the following

representation in response to a motion by defense counsel for an order requiring

disclosure of information pertaining to the use of hypnosis:

> MR. DINKLELACKER:     Judge, I told Mr. Dixon – I'm not sure if
> Mr. Campbell was there, I think he was. Well, prior defense counsel. Just
> to make it clear, Judge, a couple of witnesses have talked to a hypnotist.
> That would be Brenda Turney, Tereva Whitt. And just very recently Terry
> Tepe was also taken to a psychiatrist. Tereva Whitt – it was not a
> psychiatrist, a hypnotist – Tereva Whitt talked to the hypnotist in regards
> to trying to determine the license plate, the make of the car. There was
> nothing as far as the description of the defendant or anything like that. It
> was all done subsequent to the composite that she drew and the
> description that she gave to the police.
>
> Brenda Turney talked to the hypnotist – went to see a
> hypnotist after she had come down and viewed the lineup and after she

had positively identified the defendant from a photograph lineup and from a video. She asked to go and talk to a hypnotist. And based on that – she had already given a description, she had already identified him, so really there's nothing that we could use from that.

And Officer Reiber from Lockland, without my knowledge, without any consent, just recently took Terry Tepe to a hypnotist to try to determine things about the car as well as an alleged second defendant in this case. Has nothing to do with bolstering his testimony or identification of this defendant. And as far as I know, Judge, that's the hypnotists, you know, things that have been done. We don't plan on bringing in any hypnotist, any doctor, anything like that, with regards to hypnotists so – just one second.

THE COURT:   So. You've disclosed everything, and so it's granted. You've already disclosed it. You can bring that stuff out in perhaps cross-examination.

MR. DIXON:   Probably want to stay away from it.

(Transcript, 07/30/90, at 89-91.)

Subsequently, during his postconviction proceedings, petitioner produced documents and other materials not only suggesting that the hypnosis sessions might have been more expansive or significant in their impact on the witnesses's recollections than the prosecution indicated prior to trial, but also undermining the credibility of those witnesses' testimony in other respects. Relying on tape recordings, notes, and reports of the police investigation and witness statements, petitioner identified several instances where the pre-hypnosis recollections of Tereva Whitt, Brenda Turney, and Terry Tepe may have differed from their post-hypnosis recollections with respect to the time they were in the vicinity, the number, race, and attire of people they saw in the vicinity, and other such details. (Petition, doc.no. 8, at ¶¶63, 64, and 68). Petitioner also pointed to suppressed witness interviews that either contradicted prosecution witnesses or suggested that other people were involved in the offenses. (Petition,

doc.no. 8, at ¶¶70-74). Finally, petitioner produced evidence demonstrating that there were more individuals than just the three identified by the prosecutor above who were, in fact, subjected to hypnosis in an effort to enhance their recollections. (Motion for Summary Judgment, Doc. # 75, at 8-10 (Rolene Stallings) and 11-14 (Ronald Weisbrod)).

Petitioner further argues that the misconduct rose to the level of a due process violation because it materially and adversely affected defense counsel's preparation and deprived the jury of vital information bearing upon its province of assessing the credibility of testifying witnesses. According to petitioner, defense attorneys Joseph Dixon and David Campbell averred in their affidavits that, based on Prosecutor Dinklelacker's representations set forth above, they did not investigate the facts and circumstances surrounding the hypnosis sessions that the testifying witnesses underwent or the manner in which those sessions affected their trial testimony. (Doc. # 75, at 9-10.) Petitioner argues that Mr. Dinklelacker never reported that he was wrong regarding what he had represented about the nature and extent of the sessions and never tried to correct the false or misleading testimony presented by witnesses pertaining to those hypnosis sessions. Finally, petitioner argues that defense counsel did not have access to the suppressed reports to rebut the prosecution's argument that the witness identifications were unimpeachable.

Under Sawyer v. Hofbauer, supra, in determining whether an evidentiary hearing should be held on these claims, the Court first must determine whether petitioner had a full and fair evidentiary hearing in the state courts. The short answer is no. Petitioner raised the substance of his Brady violation allegations in his postconviction action in

claims: 66, 67, 68, 69, 79, 82, and 83. (Return of Writ, Doc. # 12, Exhs. V and Z.)
Petitioner supported those claims not only with record cites, but also with various
documents, such as investigative reports and notes, as well as affidavits, set forth in
postconviction exhibits: 14, 15, 20, 22, 23, 24, 30, 31, 32, 33, 34, 35, 36 and 37.
Petitioner raised the substance of his claim that the prosecution knowingly presented
false, misleading, or unreliable testimony – to wit: by presenting testimony by witnesses
that was contradicted by or inconsistent with undisclosed documents – in claims 72, 73,
and 79, and supported those claims with investigative reports, notes, and affidavits set
forth in postconviction exhibits 14, 15, 18, 21, 22, 23 and 24. In addition to those
claims, petitioner presented related claims of the trial court's failure to suppress the
unduly suggestive video line-up (claim 70), the use of unreliable or false testimony by
Everett Lee Rasnick (claim 76), the failure of counsel and the court to provide a
hypnosis expert (claim 41), the wrongful introduction of hypnotically-refreshed testimony
(claim 62), the wrongful identifications of petitioner stemming from an unduly suggestive
line-up procedure (claim 63), the inappropriateness of petitioner's death sentence due
to residual doubt about his guilt based in part on undisclosed favorable evidence (claim
16), and police misconduct in selectively investigating and prosecuting petitioner to the
exclusion of other potential suspects (claim 33); with the exception of claims 70 and 76,
petitioner supported all of those claims with evidence outside the record.

The trial court denied petitioner's requests for discovery and an evidentiary
hearing, and rejected petitioner's claims. (Return of Writ, Doc. # 12, Exhibit DD.) The
Ohio Court of Appeals rejected petitioner's *Brady* claims as follows:

> Upon review of Cook's claims and the corresponding evidentiary
> documents submitted in support of these claims, we conclude that the
> allegedly exculpatory evidence either was known to the defense at the
> time of trial, was cumulative to that already known to the defense, or did
> not constitute "material" evidence within the meaning of *Brady* and
> *Johnston.*

*State v. Cook*, No. C-950090 (Hamilton Cy. Ct. App. Dec. 29, 1995); Return of Writ,

Doc. # 12, at Exhibit LL, at *3. The Court of Appeals rejected petitioner's prosecutorial

misconduct claims stemming from the alleged employment of false or unreliable

testimony, noting that, "[i]n the instant case, the record is devoid of any evidence that

the prosecution had knowledge that any of its witnesses' testimony was false." *Id.*, at

*6. Finally, the Court of Appeals rejected petitioner's related claims that the trial court

erred in not suppressing the video line-up as being unduly suggestive (claim 70) and

that the prosecution employed unreliable or false testimony by Everett Rasnick (claim

76) on the basis of *res judicata*, as petitioner had supported neither of them with any

evidence outside the record; that counsel and the trial court erred in not providing a

hypnosis expert (claim 41) on the basis of *res judicata*, because even though petitioner

supported the claim with the affidavit of a hypnosis expert questioning the manner in

which the hypnosis sessions were conducted in the instant case, the fact that the state

planned to use hypnotic sessions was revealed to defense counsel at the time of trial;

that the state wrongfully introduced hypnotically-refreshed testimony (claim 62) and

identifications based on an unduly suggestive line-up procedure (claim 63) on the basis

that the exhibits submitted by petitioner did not defeat the application of *res judicata* or

warrant a hearing; that petitioner's death sentence was inappropriate due to residual

doubt about his guilt, stemming in part from undisclosed favorable evidence (claim 16),

on the basis that "the purported discrepancies and/or inconsistencies in witnesses' accounts were either immaterial to the question of Cook's guilt or resolved by the evidence adduced at trial"; and that the police committed misconduct in investigating and prosecuting petitioner (claim 33) on the basis that it was unsupported by evidentiary documents sufficient to warrant a hearing.

Based on this Court's review of the record, the state courts made factual findings as to petitioner's claims that were cursory at best, and indiscernible at worst, stemming in large part from the fact that the state courts made those findings via the well-ensconced practice in Hamilton County of the trial court adopting *in toto*, typographical errors and all, proposed findings of fact and conclusions of law submitted by the prosecution. Further, it is beyond dispute that the state courts did not afford petitioner discovery or an evidentiary hearing. Under these circumstances, this Court concludes that petitioner did not have a full and fair hearing in the state courts on either his *Brady* claims or his claims of prosecutorial misconduct. The Court further concludes that petitioner was not at fault for the state court's failure to conduct such a hearing. This conclusion satisfies the third of the *Sawyer* criteria.

Turning to the first *Sawyer* criteria, the Court finds that petitioner has alleged sufficient grounds for release. In order to prove a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), petitioner must demonstrate that the prosecution suppressed evidence, that the evidence was favorable, and that the evidence was material to either guilt or punishment. *See, e.g., Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Petitioner has always maintained his innocence and presented a defense, essentially, of mistaken identity. Petitioner has offered numerous investigative reports and notes that,

according to sworn testimony by his defense attorneys, were never provided by the prosecution during discovery. Evidence tending to impeach the credibility or recollections of witnesses who placed petitioner at the scene of the abduction or murder – (or, in the case of Officer O'Brien, petitioner in possession of the murder weapon) – would have to be characterized as favorable, especially in light of the prosecution's argument that the witnesses' identifications were unimpeachable. The evidence described above also could reasonably be characterized as material, in light of not only the absence of any physical evidence or confessions directly linking petitioner to this crime, but also the manner in which the suppression of the evidence affected, allegedly to petitioner's prejudice, trial counsel's investigation, preparation, and presentation of petitioner's defense against the charges. Under controlling Supreme Court precedent, petitioner has alleged sufficient grounds for release.

Regarding the prosecutorial misconduct allegations set forth in petitioner's fourth ground for relief, the Court notes at the outset that petitioner's burden for demonstrating that he is entitled to relief is substantial. That said, the Court finds that petitioner has alleged sufficient grounds for release. Petitioner alleges that the prosecution knowingly misrepresented to the trial court and defense counsel the nature and extent of the hypnosis sessions that various witnesses underwent, as well as the identities of which witnesses were hypnotized. Petitioner also alleges that the prosecution then knowingly presented testimony by those witnesses that was false or misleading. To prove those allegations sufficient to warrant habeas relief, petitioner must not only prove that the evidence was false, that the prosecution knew it was false, and that the evidence was material, *Workman v. Bell, supra,* 178 F.3d at 766; *see also Coe v. Bell, supra,* 161

F.3d at 343, but also prove that the misconduct in question "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright, supra*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo, supra*, 416 U.S. at 643). Further, claims of prosecutorial misconduct are subject to harmless error review. *Hensley v. McGinnis*, 188 F.3d 507 (table), No. 98-1675, 1999 WL 685932, at * * 3-4 (6th Cir. Aug. 25, 1999)(unpublished). That is, habeas relief cannot issue on a claim of prosecutorial misconduct unless that constitutional error "had a substantial and injurious effect or influence in determining the jury's verdict." *Id*., (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Under controlling Supreme Court precedent, petitioner has alleged sufficient grounds for release. Petitioner has presented evidence tending to call into question the accuracy of a statement made by prosecutor Dinklelacker during a motions hearing on July 30, 1990, set forth above. Mr. Dinklelacker stated, among other things, that only Tereva Whitt, Brenda Turney, and Terry Tepe had been hypnotized in an effort to enhance their recollections when, in fact, previously undisclosed documents indicate that other individuals, *i.e.*, Rolene Stallings and Ronald Weisbrod, were also hypnotized. Mr. Dinklelacker also made other representations about the scope and effect of the hypnosis sessions for Whitt, Turney, and Tepe that were inconsistent with or contradicted by previously undisclosed reports suggesting not only that the scope covered additional topics than those disclosed by Mr. Dinklelacker, but also that the sessions *did* have an impact on the witnesses' subsequent recollections and testimony. Given the sworn testimony by defense counsel that they relied on that statement by Mr. Dinklelacker in deciding not to investigate any further the issue of the witnesses' having

been hypnotized or to explore the issue at trial through cross-examination or use of a hypnosis expert, this Court is of the view that petitioner has alleged sufficient grounds for release as to his allegations of prosecutorial misconduct set forth in his fourth ground for relief.

The remaining *Sawyer* criterion is whether the relevant facts are in dispute. As noted above, to prove a *Brady* violation, petitioner must show that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material to either guilt or punishment. *See, e.g., Strickler v. Greene, supra*, 527 U.S. at 281-82. Favorable evidence, if not disclosed prior to or during trial, is suppressed within the meaning of *Brady* irrespective of the good faith or bad faith of the prosecutor. *Brady*, 373 U.S. at 88; *Giglio*, 405 U.S. at 154; *Agurs*, 427 U.S. at 110. Evidence is favorable within the meaning of *Brady* if it is exculpatory or impeaching. *Strickler*, 527 U.S. at 281-82. Evidence is material within the meaning of *Brady* if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Bagley*, 473 U.S. at 682 (plurality); *Kyles v. Whitley, supra*, 514 U.S. at 434; *Giglio*, 405 U.S. at 154. A reasonable probability is that which is sufficient to affect or undermine confidence in the outcome of the trial. *Bagley*, 473 U.S. at 682.

In support of his claim, petitioner presents numerous previously undisclosed police documents, such as investigative reports and handwritten notes, as well as certain affidavits, and then lays out how each piece of that previously undisclosed evidence contradicted the testimony of key prosecution witnesses or otherwise constituted evidence with which defense counsel could have impeached the credibility

of key prosecution witnesses. Referencing exhibits and affidavits assembled in

connection with the deposition of trial attorneys Joseph Dixon and David Campbell,

petitioner painstakingly set forth each argument and corresponding piece of evidence in

his motion for summary judgment (Doc. # 75-3, at 3-30). Although it is difficult to

summarize petitioner's arguments without simply repeating them in toto, it is sufficient

for purposes of this discussion to note that he offers evidence:

♦ to impeach the testimony by Officer O'Brien, given first during a
motions hearing and then at trial, that a caller to Crimestoppers identified
as petitioner stated that he had the gun used in the Shorter homicide,
when Officer O'Brien's own notes and investigative report indicated that
the caller stated he would have to steal the gun;

♦ demonstrating that undisclosed witness Randy Marksberry saw two
male blacks outside the store with a small Nissan-type truck, that
Marksberry never identified petitioner as one of those men, and that
Marksberry's observations were inconsistent with the prosecution's theory
that the male blacks involved in the abduction of Shorter were driving an
older, four-door, Oldsmobile-type car;

♦ demonstrating the existence of undisclosed witness Rolene Stallings,
a.k.a. Lattimore, who not only was hypnotized, but also offered various
observations inconsistent with the testimony of Brenda Turney and
arguments presented by the state establishing the time line, and
contradicting testimony by Terry Tepe and Everett Rasnick claiming that
they never entered the clothing store on the morning of Shorter's
abduction;

♦ demonstrating that undisclosed witness Kathy Cromer delivered mail to
the store between 9:40 and 9:50 a.m. and saw no one, but heard voices
from upstairs, permitting the inference that Shorter was still alive at that
time thereby further undermining testimony by Turney and arguments
from the prosecution establishing a time line;

♦ demonstrating that five undisclosed witnesses, including one, Ronald
Weisbrod, who was hypnotized, reported that a large red pick-up truck
was parked in front of the clothing store from a little before 9:00 a.m. until
a little after 10:00 a.m. on the day Shorter was abducted, contradicting
observations by Whitt as to whether she saw no car there or a large car

taking up two spaces and by Tepe and Rasnick that they saw a green Delta 88 parked there at or after 9:00 a.m.;

♦ demonstrating that blood on a piece of gauze, found at the site where Shorter's body was found, matched neither Shorter nor petitioner;

♦ demonstrating the existence of an undisclosed witness, Mrs. McGee, who claimed to have witnessed Shorter's abduction and who did not identify petitioner as the kidnapper;

♦ regarding prosecution witness Tereva Whitt, demonstrating several inconsistencies between her sworn testimony and prior statements she had made in previously undisclosed reports, some of which stemmed from hypnosis sessions, and observations on her part that were inconsistent with those of other undisclosed witnesses, involving such matters as initially saying that she took only one trip to the store and then remembering some two months later that she had taken two trips and that she had seen a male black identified as petitioner, what time(s) she made her trip(s), what time she had seen the victim at the store, during which trip she had seen a male white needing a shave inside the clothing store, during which trip she had seen a male white with a loose jacket leaning on the outside of the store, whether she saw two male blacks or just one male black, whether she saw a large car taking up two spaces in front of the store or no car at all, and the fact that she never reported seeing a large red pick-up truck in front of the store;

♦ regarding prosecution witness Terry Tepe, demonstrating several inconsistencies between his sworn testimony and prior statements he had made in previously undisclosed reports, some of which stemmed from hypnosis sessions, and observations on his part that were inconsistent with those of other undisclosed witnesses, involving such matters as whether Tepe was inside the clothing store on the morning of Shorter's abduction, the fact that it was Tepe's wife rather than Tepe himself who first contacted Crimestoppers about possibly having information about the Shorter abduction, whether Tepe was accompanied by witness Everett Rasnick when he (Tepe) entered Wellings jewelry store near Sullivan's clothing store, and what time Tepe and Rasnick arrived at the stores;

♦ regarding prosecution witness Everett Rasnick, demonstrating several inconsistencies between his sworn testimony and prior statements he had made in previously undisclosed reports, and observations on his part that were inconsistent with those of other undisclosed witnesses, involving such matters as the fact that he initially denied any knowledge about or of being in the vicinity of the Shorter abduction, the fact that he was able several days later to recall that he had been in the vicinity that day with

Tepe and to identify petitioner as a male black he had seen near Sullivan's clothing store, whether he and Tepe parked on the street or in a parking lot, and what type of vehicle he observed parked in front of the store;

♦ demonstrating that Officer Reiber testified inconsistently with previously undisclosed reports concerning what Tereva Whitt reported being able to recall and what time witness Janice Mako reported having driven by the clothing store;

♦ demonstrating that the victim's wife, Alma Shorter, testified inconsistently with a prior statement in a previously undisclosed report about what time her husband had left for work on the day he was abducted, possibly undermining Whitt's testimony about when she saw the victim and the prosecution's time line;

♦ regarding prosecution witness Brenda Turney, demonstrating several inconsistencies between her sworn testimony and prior statements she had made in previously undisclosed reports, some of which stemmed from hypnosis, involving such matters as the description of the male black whom she saw walking with the victim near the abandoned building where the victim's body was found, the clothing that the male black was wearing, the time that she saw the victim and male black walking near the building, and whether both of the male black's hands were visible.

(Doc. # 75-3, at 3-28.)

In opposing petitioner's motion for summary judgment, respondent reiterates that the state courts rejected petitioner's *Brady* claims on the ground that each item allegedly suppressed was neither exculpatory nor material. Respondent also emphasizes that the prosecution provided extensive discovery in petitioner's case and that, even assuming petitioner could demonstrate suppression, he could not demonstrate that any of the items were material because his trial counsel would have had to have discredited four different witnesses and explained petitioner's calls to Crimestoppers seeking a reward for information about the Shorter homicide.

Respondent proceeds to take issue with the favorability and/or materiality of many of the suppressed documents offered by petitioner.  (Doc. # 76, at 17-20.)

In light of the painstaking effort by petitioner's counsel in laying out each suppressed document and the manner in which it contradicted testimony or undermined the prosecution's case, the fact that petitioner's defense counsel have already confirmed, once by affidavit and again by deposition testimony, that they did not receive the suppressed documents offered by petitioner and the manner in which each nondisclosure affected their defense strategy, and the fact that there does not appear to be a dispute regarding the authenticity of the suppressed documents, the Court is not necessarily persuaded that relevant facts are in dispute regarding the *Brady* violations alleged in petitioner's second ground for relief.  That said, the Court has included those allegations in its determination of whether an evidentiary hearing is warranted because they provide the foundation for the allegations of prosecutorial misconduct set forth in petitioner's fourth ground for relief.  And this Court is of the view that relevant facts are in dispute regarding petitioner's fourth ground for relief.

As noted above, to prove the claims of prosecutorial misconduct that petitioner has alleged in his fourth ground for relief, petitioner essentially must prove not only that the the prosecution made false representations and presented false evidence, that the prosecution knew the representations and evidence were indisputably false, and that the representations and evidence were material, *Workman v. Bell*, 178 F.3d at 766; *see also Coe v. Bell*, 161 F.3d at 343, but also that the misconduct in question "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright, supra*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo,*

*supra*, 416 U.S. at 643). The claims and evidence advanced by petitioner thus far certainly suggest some discrepancies. What to this point they do not establish is either that the statements/testimony were indisputably false, or, if so, whether the prosecution knew they were false. Petitioner has proposed calling someone who can authenticate Cincinnati and Lockland police records; defense attorneys Joseph Dixon and David Campbell to testify consistent with their affidavits and depositions regarding the documents they never received and the manner in which they relied on the prosecutor's representations that the state did not intend to use hypnotically refreshed testimony; and William Wester to testify consistent with his affidavit calling into question the manner in which the hypnosis sessions were conducted in this case. This Court is not persuaded that those witnesses can definitely answer the question of what the prosecutor knew, although their testimony may well be useful on other issues. The prosecutor, however, would appear to have relevant testimony to give, and the parties may wish to depose him and call him at the evidentiary hearing.

In sum, this Court is of the view that an evidentiary hearing is warranted on petitioner's second and fourth grounds for relief because he did not receive a full and fair hearing in the state courts, because he has alleged sufficient grounds for release, and because relevant facts are in dispute. The Court will convene a status conference to establish a scheduling order, determine which witnesses will be called, and select a date for the hearing.

### IV. First, Third, and Ninth Grounds for Relief

After careful review of petitioner's motion for summary judgment on his first, third, and ninth grounds for relief, as well as the state court record and numerous

exhibits submitted during these habeas corpus proceedings, this Court is of the view that an evidentiary hearing is not necessary on those claims. The information that petitioner seeks to develop through an evidentiary hearing is already a part of the record, can be made a part of the record, or is otherwise unnecessary. The Court will defer ruling on the merits of petitioner's first, third, and ninth grounds for relief until after the evidentiary hearing on his second and fourth grounds for relief.

## V. Conclusion

For the foregoing reasons, petitioner's motion for summary judgment, (Doc. # 75), is DENIED. The Court will conduct an evidentiary hearing on petitioner's second and fourth grounds for relief, and will defer its ruling on petitioner's first, third, and ninth grounds for relief until after the evidentiary hearing.

The parties are DIRECTED, within ten (10) days of the date of this order, to contact the Undersigned to schedule a status conference.

Michael H. Watson, Judge
United States District Court